**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                **3:05cv315/MCR/MD**

**0.25 OF AN ACRE OF LAND,
MORE OR LESS, SITUATED IN
ESCAMBIA COUNTY, STATE
OF FLORIDA, AND ESTATE
OF ALBERT HUDSON, et al.,**

      **Defendants.**
_____/

## FINAL JUDGMENT OF CONDEMNATION

      **THIS CAUSE came on to be heard on plaintiff UNITED STATES OF AMERICA'S motion for final hearing which was noticed to all parties.  It appearing to the court that:**

      **(a)    All defendants who are parties to this action have been duly served with legal process and the court has jurisdiction over the parties and the subject matter.**

      **(b)    Defendants RITA MARIE MCNEALY, ESCAMBIA COUNTY TAX COLLECTOR, CITY OF PENSACOLA, ANNIE JOYCE LAWRENCE, JOANN HUDSON SIBERT, MELVIA JANE HUDSON CROSBY, DIANE MCNEALY, BEN JOHNSON, WILLIAM JOHNSON, and the Guardian Ad Litem for such unknown heirs, or claimants to the property who are infants, incompetent or otherwise not <u>sui juris</u> and those who may be in the military service of the United States have answered the complaint.  The pleadings and affidavits on file (there being no depositions, answers to interrogatories or admissions) show there is no genuine issue as to a material**

fact that the United States is entitled to a Judgment in Condemnation;

(c)     The United States has submitted to the court its proof of prior ownership of the property, fair compensation for the property, and the death certificates of Alphonso Hudson, Sarah Jane Hudson, Albert Hudson, Flossie Mae Johnson, Joseph Hudson and Henry Hudson, Jr.; the proof having been submitted and examined, and the pleadings, together with the record as a whole, and the evidence presented at the final hearing having been considered, the court finds that the property subject to the declaration of taking, to wit:

> All that tract or parcel of land lying and being in Section 8, Township 2 South, Range 30 West, Tallahassee meridian, Escambia County, Florida, being more particularly described as being:

> All of Lot 17, Block "B", Unit No. 1, of Rosewood Terrace Subdivision, a subdivision of a portion of said section 8, according to the plat of said subdivision thereof recorded in Plat Book 5, Page 11, of the records in the office of the Clerk of the Circuit Court in and for Escambia County, Florida in Book 2640, at page 990

> Containing 0.25 of an acre, more or less, and designated as Tract 173 of the Escambia Treating Company Superfund Site Project.

is lawfully subject to condemnation in accordance with the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), all as provided by CERCLA, and Title 42, United States Code, Section 9604(j);

(d)     And it further appearing that service upon all parties who may claim an interest in said property has been properly effectuated in accordance with Rule 71A(d), Fed. R. Civ. P.;

(e)     And it further appearing that as part of the Amended Complaint in Condemnation, the United States attached a declaration of taking signed by the authority empowered by law to acquire the land described in the complaint, declaring that the land is taken for the use of the United States;

**(f)      And it further appearing that the fair and just compensation[1] for the taking of the property is $9,400.00[2];**

---

[1] As part of the declaration of taking, section 3114 requires a statement of the amount of money estimated to be just compensation for the land taken. See 40 U.S.C. § 3114(a)(5). In the instant case, the amount of just compensation as determined by the Environmental Protection Agency in the declaration of taking was $9,400.00.  The parties dispute the fair market value of the property and the amount of just compensation to which defendants may be entitled.  At the final hearing, the United States called as its expert witness Terry Hoffman, a certified appraiser.  Hoffman appraised the subject property on December 16, 2002. Using a sales comparison approach wherein the value of the subject property was determined by direct comparison with similar properties that had sold in the same or similar market, Hoffman appraised the subject property at $23,500.00.  The United States argued that the taking of the property occurred in August 2005 when the complaint was filed and the funds for just compensation were deposited with the court.

Defendant Ben Johnson testified that his aunt who lived on the property moved out in 1999.  There is no evidence suggesting nor was any offered at the hearing that anyone else occupied the house subsequent to her vacating the premises.  Johnson testified that he received a letter from the Army Corps of Engineers in June 2001 stating the property had been appraised for $34,000.00.  Johnson also testified that at some point after his aunt left the premises, the federal government erected a fence around the property and posted signs stating that the property belonged to the United States.  At the hearing, the United States stipulated there was a letter sent to the property owners in 1998 stating the United States wished to purchase the property for $34,000.00.  However, no evidence was submitted that any action was taken by the owners as to that offer or that any other condemnation proceedings were initiated by the United States in an effort to take title to the property at that time.  Johnson maintains that the court should find the value of the property to be $34,000.00 and not $23,500.00 as suggested by the United States because by the time the appraisal was conducted, the condition of the property had deteriorated.  Johnson further asserted that the defendants should be entitled to the $34,000.000 valuation because the United States had possession of the property long before the appraisal was conducted or any suit for condemnation filed.

Upon review of the record and the evidence presented at the hearing, the court finds the value of the property to be $23,500.00 as stated in the 2002 appraisal.  In condemnation proceedings, the value of the condemned property is determined as of the date of the taking.  See United States v. 100.01 Acres of Land in Buchanan County, Virginia, 102 Fed.Appx. 295, 297 (4th Cir. 2004) (unpublished).  In cases where the government files a declaration of taking before it has entered into possession of the property, the filing of the declaration constitutes the taking.  See 7 Fed. Proc., L. Ed. § 14:162.  In the instant case, the declaration of taking was filed and the deposit of funds for just compensation as stated therein was tendered to the court on August 23, 2005.  (See docs. 9, 10.)  Accordingly, the court finds that the date of taking in this case was August 23, 2005.  As of that date, there was only one appraisal offered by either party which placed the value of the property at $23,500.00.  The court notes that, although there is some suggestion that the United States took physical possession of the property sometime prior to the filing of the declaration of taking, there is no evidence before the court showing when such possession began.  Because the only reliable evidence of value offered by the parties at the hearing was the December 16, 2002, appraisal by Terry Hoffman, the court finds the value to be $23,500.00.  See United States v. Dillman, 146 F.2d 572, 574 (5th Cir. 1944) ("The valuation must ... be determined solely from the evidence adduced at the hearing and the use of evidence obtained in any other manner is improper.") (citations omitted).

[2] This figure was calculated based on the appraised value of the property at $23,500.00 and distribution of said funds as follows: Albert Hudson was the original owner of the property by deed.  Upon his death, a one half interest in the property went to his sister Alberta Hudson by deed and the other half interest went to his mother Sarah Jane Hudson by inheritance.  Upon the death of Sarah Jane Hudson, her one half interest was subject to intestate distribution among her five children, including Alberta Hudson. Each of Sarah Jane Hudson's children was to take a one fifth interest in her one half interest. Accordingly, Alberta Hudson had her one half interest bequeathed by deed and her one fifth interest of Sarah Jane Hudson's one half interest in the property. The United States acquired all of Alberta Hudson's interests by deed in exchange for

(g)     And it further appearing that on the 23rd day of August, 2005, there was deposited by the United States of America, the plaintiff, with the Clerk of the United States District Court for the Northern District of Florida, the sum of $9,400.00, representing the fair compensation for the property;

(h)     And it further appearing that the rights to the funds representing the fair compensation for the property rightfully belong to: ADDIE HUDSON, ANDREA BOWDRY, ROBERT HUDSON, LAJUANA MILLS, ANNIE JOYCE LAWRENCE, JOANN SIBERT, MELVIA JANE HUDSON CROSBY, MARION HUDSON, BEN JOHNSON and WILLIAM JOHNSON, JR.[3];

---

$20,400.00 in 1999.  As such, the United States's share of the $23,500.00 due to be distributed as just compensation as a result of these condemnation proceedings is comprised of $11,750.00 for its one half interest and $2,350.00 for its one fifth of one half interest for a total of $14,100.00.  Subtracting this amount from $23,500.00 leaves $9,400.00 to be distributed among Sarah Jane Hudson's remaining heirs.  This amount was deposited with the court by the United States.

[3] In the instant case, the court must decide whether three of the named defendants are entitled to a share of the condemnation award.  At issue are the rights of Elmore Watson, Diane McNealy and Rita McNealy.  In the amended complaint, the government lists Elmore Watson as having a claim or interest in the property at issue as the child of Alphonso Hudson (deceased).  (See doc. 12, ¶ 12.)  In support of its motion for final hearing, the government submitted the affidavits of Reverend C. E. Salter ("Salter") and Vera Watson ("Watson").  Salter avers that he has been associated with the Hudson family since 1941.  With respect to Alphonso Hudson, Salter states that Hudson had an extra-marital relationship with Vera Watson.  Salter claims that Elmore Watson was the son of Vera Watson from a relationship with an unnamed man and that Alphonso Hudson was not Elmore Watson's father.  Hudson did not claim Elmore Watson as his son.  In her affidavit, Vera Watson, Elmore's mother, avers that she and Alphonso Hudson had a relationship between 1950 and 1957.  They had two children together: Elmore Watson and Annie Joyce Lawrence.  Vera Watson and Alphonso Hudson never married.

State law governs what is a property interest compensable under the Fifth Amendment.  See 7 Fed. Proc., L. Ed. § 14:187.  In the instant case, distribution of proceeds derived from condemnation proceedings will be governed by Florida law on intestate succession.  See Fla. Stat. §§732.101, 732.103.  According to Salter's affidavit, Elmore Watson was not recognized by Alphonso Hudson as his son and there is no evidence that Alphonso Hudson adopted Elmore Watson.  According to Vera Watson, she and Alphonso Hudson never married.  Thus, state law relating to distribution to persons born out of wedlock will apply.  Section 732.108(2) provides three alternative means by which a person born out of wedlock can establish that he is a putative heir for purposes of intestate succession: (a) the natural parents participated in a marriage ceremony before or after the birth of the person born out of wedlock; (b) the paternity of the father is established by an adjudication before or after the death of the father; or (c) the father acknowledges the paternity in writing.  See Fla. Stat. § 732.108; Thurston v. Thurston, 777 So.2d 1001, 1002 (Fla.1st DCA 2000).  In the instant case, neither subsection (a) or (c) is applicable.  Subsection (b) of section 732.108 requires an adjudication of paternity based upon clear and convincing evidence submitted by the person born out of wedlock.  Thurston, 777 So.2d at 1002.  There is no evidence before the court that paternity has ever been established by adjudication with respect to Elmore Watson and Alphonso Hudson.  There is no birth certificate identifying Alphonso Hudson as Elmore Watson's father; no blood tests proving/disproving paternity; no evidence that Alphonso Hudson provided support, health care or insurance benefits of any kind to Elmore Watson and most notably, no claim by Elmore Watson that Alphonso Hudson is his father.  See Sanders v. Apfel, 85 F.Supp.2d

**IT IS THEREFORE, ORDERED AND ADJUDGED:**

**(1)      that in accordance with Title 40, United States Code, Section 3114, upon the filing of the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration -**

> **(a)     title to the interest specified in the declaration vests in the United States of America;**
>
> **(b)     the land is condemned and taken for the use of the United States; and**
>
> **(c)     the right to just compensation for the land vests in the persons entitled to the compensation.**

**Therefore, the court finds that on the 23rd day of August, 2005, the fee simple absolute title to the lands described in the amended complaint vested in the United States of America free and discharged of all claims and liens of every kind whatsoever.**

**(2)      that service of process was properly perfected upon all parties claiming**

---

1275, 1277-81 (M.D. Fla. 1999).  Elmore Watson has not answered or responded to the government's complaint in any fashion and did not appear at the final hearing in this case.  He has not presented any evidence to demonstrate that he his a putative heir of Alphonso Hudson or that he is entitled to any share of the condemnation proceeds.  Accordingly, to the extent that Salter's affidavit disputes whether Alphonso Hudson was Elmore Watson's father and absent any evidence by Vera Watson or Elmore Watson to prove the contrary, there does not appear any basis upon which to award Elmore Watson an intestate share of the proceeds at issue in this case.  See Estate of Jacob Tim v. Rudawski, 180 So.2d 161, 162-63 (Fla. 1965) (The mere fact of a blood relationship with a decedent does not, of itself, establish a right to share in his estate. ... The burden of proving the existence of the state of facts upon which the statutory right to inherit depends should be upon the one asserting such statutory right.)  Accordingly, the court finds that Elmore Watson is not entitled to a share of the condemnation award.

It appears that the same analysis would apply to the McNealy sisters.  In the amended complaint, the government names Diane McNealy and Rita McNealy as having a claim or interest in the property at issue as the children of Henry Hudson.  Although both Diane McNealy and Rita McNealy have filed an answer to the complaint, they have not offered any evidence to prove, aside from their own assertions and a copy of an obituary for Alberta Hudson, they are the heirs of Henry Hudson or entitled to any portion of the proceeds in this case.  Furthermore, Salter's and Watson's affidavits create a dispute as to whether the sisters are the children of Henry Hudson.  Neither Diane McNealy nor Rita McNealy appeared at the final hearing to present evidence of their entitlement and there is nothing before the court to establish such right.  These claimants have not met the degree of proof required to demonstrate they are entitled to receive a portion of the condemnation award as heirs of Henry Hudson and therefore will not be awarded a portion of the proceeds in the instant case.

an interest in the property being condemned in accordance with Rule 71A(d), Fed. R. Civ. P.;

(3)      that the fair compensation for the condemnation is $9,400.00;

(4)      that ADDIE HUDSON, ANDREA BOWDRY, ROBERT HUDSON, LAJUANA MILLS, ANNIE JOYCE LAWRENCE, JOANN SIBERT, MELVIA JANE HUDSON CROSBY, MARION HUDSON, BENJAMIN HUDSON and WILLIAM JOHNSON, JR., are entitled to the distribution of said funds as follows:

(a)      ADDIE HUDSON - $1,175.00

(b)      ANDREA BOWDRY - $293.75

(c)      ROBERT HUDSON - $293.75

(d)      LAJUANA MILLS - $293.75

(e)      ANNIE JOYCE LAWRENCE - $293.75

(f)      JOANN SIBERT - $1,175.00

(g)      MELVIA CROSBY - $1,175.00

(h)      MARION HUDSON - $2,350.00

(i)      BEN JOHNSON - $1,175.00

(j)      WILLIAM JOHNSON, JR. - $1,175.00;

(5)      The Clerk is hereby directed to disburse the funds deposited in the registry of the court in accordance with this order.

DONE AND ORDERED this 28th day of July, 2006.


s/ *M. Casey Rodgers*

M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE